## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Plaintiffs<br>KELLY A. DOLCEAMORE,<br>Administratrix ad Prosequendum of the<br>Estate of Stephen A. Dolceamore, as<br>beneficiary of the Estate and on her own<br>behalf;<br>and<br>JEANNE LEE, as Court Appointed Guardian<br>of her grandchildren, the natural children of<br>KELLY A. DOLCEAMORE and Decedent,<br>STEPHEN A. DOLCEAMORE, on behalf of<br>his minor daughters, INFANT 1 and INFANT<br>2 as beneficiaries of the Estate of Stephen A.<br>Dolceamore and on their own behalf<br><br>Vs.<br><br>CITY OF TRENTON, and,<br>CITY OF TRENTON POLICE<br>DEPARTMENT, and<br>and POLICE DIRECTOR SHEILAH<br>COLEY, in her official and individual<br>capacity, and SERGEANT ANTHONY<br>MANZO, in his official and individual<br>capacity, and OFFICER JOSEPH<br>McCARTHY, in his official and individual<br>capacity, and OFFICER VISHAN SINGH, in<br>his official and individual capacity, and<br>ROBERT J. FURMAN, III, in his official and<br>individual capacity, and<br>JOHN/JANE DOE(s) (1-10), a fictitious<br>person or persons yet to be identified, in his/<br>her/their official and individual capacity,<br> as law enforcement member(s) and/or<br>supervisor of the Trenton Police Department<br>and/or City of Trenton; | Case #:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

## COMPLAINT

Plaintiffs, Kelly A. Dolceamore, a citizen and resident of the Commonwealth of Pennsylvania, and the duly appointed Administratrix ad Prosequendum of the Estate of her deceased husband, Stephen A. Dolceamore, on behalf of the Estate and on her own behalf as surviving spouse, and Plaintiff, Jeanne Lee, a citizen and resident of the Commonwealth of Pennsylvania, as court-appointed guardian of the minor children, Infant A and Infant B,  of Administratrix and Decedent, Stephen A. Dolceamore, and in her own right, by way of complaint against defendants, says as follows:

## I.     INTRODUCTION

1.      This cause of action arises from the death of Stephen A. Dolceamore on April 3,2020, on the parking lot grounds of,  or immediately adjacent to,  Saint Francis Medical Center located at Chambers and Hamilton Street, Trenton, County of Mercer, State of New Jersey.

2.      This cause of action is for compensatory damages brought pursuant to the Civil Rights Act of 1964, 42 U.S.C. §1983 et seq. and the New Jersey Civil Rights Act, N.J.S.A.10:6-2 et seq, to redress the deprivation under color of state law of Decedent, Stephen A. Dolceamore's,  clearly established civil and constitutional rights as secured by the 4th and 14th Amendments to United States Constitution against Defendants, City of Trenton ("CITY"), City of Trenton Police Department {"TPD"), Police Director Sheilah Coley ("COLEY"), individually and in her official capacity;  Sergeant Anthony Manzo (MANZO"), individually and in his official capacity as a law enforcement member and/or supervisory member  of the Trenton Police Department; Joseph McCarthy ("McCARTHY"), individually and in his official capacity as a law enforcement member and/or supervisor of the Trenton Police Department; and Robert J. Furman, III,("FURMAN") individually and in his official capacity as a law

1

enforcement member and/or supervisor of the Trenton Police Department; Vishan Singh ("SINGH"), individually and in his official capacity as a law enforcement member and/or supervisor of the Trenton Police Department; and John/Jane Doe (s) (1-10) ("DOES") as a law enforcement member(s) and/or supervisor(s) of the Trenton Police Department, yet to be identified and designated herein by fictitious identities; and for their respective violations of Decedent Dolceamore's right to be free from unreasonable searches and seizures of his person through the use of excessive force; and defendant, City of Trenton ("CITY and the Trenton Police Department ("TPD") for its unconstitutional policies, customs, practices  and/or procedures under *Monell*[1], and its progeny.

## II.    JURISDICTION AND VENUE

3.    This Court has federal question jurisdiction over federal questions arising under 42 U.S.C. 1983 et seq., pursuant to 28 U.S.C. §1331, §1343, and §42 U.S.C. 1983, 1988.

4.    This Court likewise has jurisdiction over this matter as diversity of citizenship exists between all plaintiffs as citizens of the Commonwealth of Pennsylvania and all defendantsas citizens of the State of New Jersey pursuant to 28 U.S.C. 1332.

5.    This Court has pendent and/or antecedent jurisdiction of all statutory and/or common law causes of action arising under state law for violation of the New Jersey Civil Rights Act and the New Jersey Wrongful Death and Survivorship Act under the statutes of the State of New Jersey

6.    Venue is proper in this Court under 28 U.S.C. §1391(b) because all incidents, events and occurrences giving rise to this action occurred in the City of Trenton, which is in thisUnited States District of New Jersey, Trenton vicinage.

---

[1]*" Monell v. Dept of Soc. Servs.*", 436 U.S. 658, 701 (1978)

### III.    PARTIES

7.      On or about April 3, 2020, at all times relevant hereto until the time of his death,plaintiff- Decedent, Stephen A. Dolceamore, ("Decedent") was a citizen and resident of the Commonwealth, Pennsylvania residing  at 60 S. State Road, Media  PA 19063.

8.      Plaintiff, Kelly A. Dolceamore, was at all times material hereto a citizen and resident of the Commonwealth of Pennsylvania the lawfully married spouse of Decedent, Stephen A. Dolceamore, and resides at  310 Butler Avenue, Springfield Township, Pennsylvania.

9.      Plaintiff, Kelly A. Dolceamore, was appointed Administratrix of the Estate ofStephen A. Dolceamore, by the Orphan's (Probate) Court of the Delaware County Court of Common Pleas, Commonwealth of Pennsylvania,  on or about March 23, 2021.

10.      Plaintiff, Kelly A. Dolceamore, brings this action as Administratrix of the Estateof Stephen A. Dolceamore and in her own right and as parent and natural guardian of the two minor children of plaintiff, Kelly A. Dolceamore and Decedent, Stephen A. Dolceamore, hereinidentified as Infant A, age 4, and Infant B, age 2,  female minor daughters.

11.      Decedent, Stephen A. Dolceamore, is survived by his next of kin including his wife, Kelly A. Dolceamore, and his children, minor plaintiffs, Infant A, and Infant B, and his children's maternal and paternal grandparents.

12.      Plaintiff, Jeanne Lee, is a citizen and resident of the Commonwealth and  is the maternal grandmother of minor plaintiffs, Infant A, and Infant B, who are citizens and residents of the Commonwealth of Pennsylvania and is the co-court-appointed guardian of the infant-plaintiffs ( along with her husband, Robert Wilkinson) and joins with Administratrix in bringing this action on behalf of Infant A and Infant B as beneficiaries of the Estate of their

deceased father and in their own right as survivors of Decedent.

13.  Defendant, the City of Trenton("City") at all times material hereto, is a political subdivision of the State of New Jersey, organized and existing under the laws of the State of New Jersey with the responsibility for making governmental policy and for oversight of various City agencies and instrumentalities including but not limited to the TPD, with offices located at 319 East State Street, Trenton, NJ 08608.

14.  Defendant, Trenton Police Department ("TPD"), is at all times material hereto, a City agency with offices located at 319 East State Street, Trenton, NJ 08608, and is the agency organized and existing under the laws of the State of New Jersey through which the City fulfills its policing functions within the City.

15.  Defendant, TPD, is a policy making body, agency  and/or  instrumentality of Defendant, City of Trenton, for providing police and law enforcement services to and on behalf of the City of Trenton.

16.  Upon information and belief, defendant, Police Director Sheilah Coley, (" Coley") is and was at all times material hereto, a citizen of the United States, and the State of New Jersey with offices located at 319 East State Street, Trenton, NJ 08608, and is the duly appointed highest official formulating and implementing the policies, practices, procedures, training, and supervision for the TPD.  Defendant, Police Director Sheilah Coley is sued individually and in her official capacity.

17.  Defendant Coley, at all times material hereto, was the superior of the defendants, Manzo, McCarthy, Furman and Singh, and John/Jane Doe (s), and was responsible for their screening, hiring, retention, training, supervision, discipline, and conduct. Defendant Coley also responsible for the training, supervision, and oversight of the TPD, including

formulation and enforcement of the regulations, policies, procedures, and standards of the TPD regarding, among other things, use of force training and procedures, arrest procedures, medical care, de-escalation tactics, non-lethal restraint training, practices and procedures, internal affairs, discipline, and overall conduct of the officers of the TPD.

18.     Defendant Coley was likewise responsible for ensuring that all officers of the TPD obeyed the laws of the United States, the State of New Jersey and the policies, practices, procedures, regulations, training, and supervision of the TPD.

19.     Upon information and belief, defendant, Anthony J. Manzo, ("MANZO") is and was at all times material hereto, a citizen and resident of the State of New Jersey, and is sued individually and in his official capacity.

20.     At all times material hereto, defendant, Anthony J. Manzo, was employed as a duly appointedand sworn police officer and Sergeant, of the City of Trenton and Trenton Police Department and was acting in his individual capacity and/or under color of state law, and within the scope of his employment, at all times material hereto.

21.     Defendant, Joseph S. McCarthy (McCARTHY"), at all times material hereto, was a citizen and resident of the State of New Jersey, and is sued individually and in his official capacity.

22.     At all times material hereto, defendant, McCarthy, was employed as a duly appointed and sworn police officer of the City of Trenton and Trenton Police Department and was acting in his individual capacity and/or under color of state law, and within the scope of hisemployment, at all times material hereto.

23.     Defendant, Robert J. Furman, III, ("FURMAN") at all times material hereto, was a citizen and resident of the State of New Jersey, and is sued individually and in his official capacity.

24.     At all times material hereto, defendant, Furman, was employed as a duly appointed and sworn police officer of the City of Trenton and Trenton Police Department and was acting in his individual capacity and/or under color of state law, and within the scope of his employment, at all times material hereto.

25.     At all times material hereto, defendant, Vishan Singh ("SINGH"),  was a citizen and resident of  the State of New Jersey, and is sued individually and in his official capacity.

26.     At all times material hereto, defendant, Singh, was employed as a duly appointed and sworn police officer of the City of Trenton and Trenton Police Department and was acting inhis individual capacity and/or under color of state law, and within the scope of his employment, at all times material hereto.

27.     Defendant(s), John/Jane Doe(s) (1-10) ("DOES") was/are/were employed as a duly appointed and sworn police officer of the City of Trenton and Trenton Police Department and was acting in their individual capacity and/or under color of state law, and within the scope of their employment, at all times material hereto.

28.     Defendant(s), John/Jane Doe(s) (1-10) was/were the superiors of the defendants, Manzo, McCarthy, Furman and Singh, and John/Jane Doe (s), and was/were responsible for their screening, hiring, retention, training, supervision, discipline, and conduct. Defendant Coley also responsible for the training, supervision, and oversight of the TPD, including formulation and enforcement of the regulations, policies, procedures, and standards of the TPD regarding, among other things, use of force training and procedures, arrest procedures,

6

medical care, de-escalation tactics, non-lethal restraint training, practices and procedures, internal affairs, discipline, and overall conduct of the officers of the TPD.

29.     Defendant(s), john/Jane Doe(s) (1-10) was/were likewise responsible for ensuring that all officers of the TPD obeyed the laws of the United States, the State of New Jersey and the policies, practices, procedures, and regulations of the TPD.

## IV.    STATEMENT OF FACTS COMMON TO ALL COUNTS

30.     On April 3, 2020, at approximately 11:45 a.m., police dispatcher for the City of Trenton  and/or the Trenton Police Department received a call from a concerned citizen that a man without a shirt, now known to be Decedent, Stephen A. Dolceamore, was in the intersection at or near Chambersand Hamilton Street in the City of Trenton.

31.     In response to the call, defendants, Manzo, McCarthy, Furman, and Singh weredispatched to and arrived on the scene, and observed Decedent Dolceamore who appeared to the caller or callers to be to be distraught and disoriented, was acting erratically, was walking into traffic, and was having a medical or mental health emergency.

32.     As the defendant officers drove to the scene, one or more of the officers acknowledged to the dispatcher that the officer was responding to the call and looking for "the mental person."

33.     As the officers approach Decedent Dolceamore, he ran into the parking lot of St. Francis Medical Center, away from public vehicular traffic, and was screaming multiples times for help.

34.     The officers cornered Decedent within the confines of the hospital parking lot and jointly tackled Decedent.

35.     During the course of restraining Decedent, the officers pinned Decedent's face to the dirt and mulch with a hand to the back of his head and neck.

36.     The Defendant officers, particularly, Defendant Sergeant Manzo then placed his hand to the nap of Decedent Dolceamore's neck and head and forcibly pinned and pressed Decedent's face into the dirt and mulch on the ground while Defendants McCarthy, Furman, and Singh placed their body weight on Decedent's back and legs while trying to handcuff Decedent.

37.     While restrained by the defendant officers' body weight on the ground, with one officer delivering closed-fist punches to the ribs of Decedent, Officer Manzo continues to exert his full body weight pressure to the back of Decedent's head and neck forcing his face and mouth into the dirt and mulch.

38.     Decedent continues to plead for help and states repeatedly that he cannot breath.

39.     As Decedent pleads louder, Officer Manzo, re-positions to exert even more pressure to Decedent's head muffling Decedent's complaints that he could not breath.

40.     Officers, Manzo, McCarthy, Singh and/or Furman, continued to use physical force including striking plaintiff to comply, kneeling on his back and limbs, and imposing their collective body weight supplemented by the weight of their body armor and equipment to pin plaintiff to the ground despite plaintiff's pleas that he could not breathe.

41.     Decedent repeated his statements " *I can't breathe,*" and "*help*," clearly and unmistakably signaling to the defendant officers he was being smothered.

8

42.     The defendant officers, Manzo, McCarthy, Singh, and or Furman, jointly and severally, who were dispatched to render aid and assistance to a person suffering a medical emergency, refused to release physical holds on Decedent and, instead, continued to apply pressure to Decedent's head and neck, pinning his face to the dirt and his body to the ground face-down in a prone position with an officer's knee in his back, thereby intentionally ignoring decedent's cries for help.

43.     Decedent is then faintly heard on the body cam audio to say: "*I'm gonna die*."

44.     Over the next seconds, Decedent's voice becomes soft, slow, muffled and then silent.

45.      Decedent, Stephen A. Dolceamore ceased breathing.

46.     Decedent is initially left by the Defendant officers on his stomach for several seconds as the Defendant officers verbally coax Decedent to regain consciousness.

47.     As Decedent turns purple, Decedent is turned over and CPR heart compression is initiated.

48.     When heart compression is unsuccessful, the Defendant officers administer Narcan to Decedent to address the unresponsiveness  they induced when they, jointly and severally, applied unreasonable restraint techniques using  unreasonable excessive force, intentionally restricting decedent's ability to breathe.

49.     Despite acknowledging on their body cam audio that Decedent needed to go to the hospital, Defendant officers, jointly and severally, refuse to transport Decedent to the Emergency Ward despite being on the grounds of the St. Francis Medical Center.

50.     On arrival at the emergency ward, Decedent was pronounced dead at the age of twenty-nine.

51.     On or about September 3, 2020, Police Director Sheilah Coley, issued an official public statement regarding the  death of Stephen A, Dolceamore, stating it was a "*tragic incident*" which illustrated "*why the Trenton Police Department must continue to expand its efforts to be more accountable to the community we serve.*"  Police Director Sheilah Coley also stated that citizen complaints needed to be reviewed more quickly and, when necessary "*disciplinary action taken.*"  Defendant Coley finished by stating that the actions of the officers involved in Decedent's death were "*immediately referred to the N.J. Attorney General's Office when it happened earlier this year.*" "*Trenton's Top Cop responds to bodycam video showing arrest of man who later died.*" 6abc Digital Staff., Courier Post, September 3, 2020.

52.     It  was nonetheless well-known throughout the law enforcement community for decades that holding a subject in a prone position as a compliance hold for extended periods of time can be deadly, particularly if breathing is restricted.

53.     Compressing an arrestee in a prone position with weight on their neck, back and/or abdomen restricts their ability to breathe and can result asphyxiation.

54.     Death caused by this form of asphyxiation is referred to as death from positional, mechanical or compression asphyxia.

55.     In 1995, the United States Department of Justice, citing the National Law Enforcement  Technology Center, from a report prepared by the International Association of Chiefs of Police for the National Institute of Justice published a bulletin  warning law enforcement more than twenty-five (25) years ago about the dangers of prone face-down restraint, stating: "*The risk of positional asphyxia is compounded when an individual with predisposing factors ( such as obesity, alcohol and high drug use, enlarged heart) becomes*

*involved in a violent struggle with an officer or officers, particularly when physical restraint includes behind-back hand handcuffing combined with placing the subject in a stomach-down position. National Law Enforcement Technology Center*, "**Positional Asphyxia-Sudden Death**" (June 1995).

56.     On April 21, 2021, the Medical Examiner's Office of the State of New Jersey issued an amended death certificate which reflected the manner of death of decedent, Stephen A. Dolceamore was "*Homicide*" and that the death occurred as a result of "*physical restraint*". The immediate cause of death was determined to be  "*Methamphetamine intoxication with physical restraint and chest wall restriction.*"

57.     Decedent, Stephen A. Dolceamore, is survived by his wife, Plaintiff, Kelly A. Dolceamore, his two infant daughters, now ages 2 and 4, and his children's maternal and paternal grandparents.

## V.    CAUSES OF ACTION

### COUNT ONE

**VIOLATION OF CIVIL RIGHTS UNDER 42 USC 1983 ET SEQ AGAINST ALL DEFENDANTS IN THEIR OFFICIAL AND INDIVIDUALCAPACITIES UNREASONABLE USE OF EXCESSIVE FORCE**

58.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 57 inclusiveas if each were fully set forth herein.

59.     At all times material hereto, defendants, jointly and severally, deprived Decedent of his civil and constitutional rights through their intentional, wanton, willful and malicious actions  thereby directly and proximately caused the death of or were a substantial factor in

causing the death of deceased plaintiff through the use of force, the nature and extent of which was objectively unreasonable and done with deliberate indifference to Decedent's rights, health, safety, and welfare.

60.    The Defendant Officers, jointly and severally, were acting under color of state law of the State of New Jersey, and in their individual capacities when they engaged in the illegal and illicit conduct which deprived Decedent of his civil and constitutional rights to be free of unlawful and unreasonable seizures of his person as guaranteed by the Fourth, Eighth and Fourteenth Amendments of the United states constitution and as such the aforementioned acts constitute an actionable violation of 42 U.S.C. 1983.

61.    The officers' actions were malicious as they acted consciously in violating Decedent's civil and constitutional rights and consciously intended to injure Decedent in the manner inflicted on him, and by intentionally ignoring his pleas that he could not breath, knowing it was unlawful to do so, and/or they acted, jointly and severally, in a wanton and willful manner by recklessly and/or callously disregarding Decedent's rights.

62.    At all times material hereto,  the Defendant officers' violations of 42 USC 1983 was a direct and proximate cause of Decedent's injuries and death, and was a substantial factor in causing Decedent's injuries and death including but not limited to Decedent's pain, suffering, emotional distress, and mental anguish in  contemplating his death, as well as the loss of eco0nomic damages and services to his dependent wife and minor children caused by the Defendant Officers, jointly and severally, thereby entitling plaintiffs and Plaintiff's Estate to compensatorydamages, punitive damages, interest, attorneys fees, costs of suit and such other relief as the Court deems just and appropriate.

WHEREFORE, Plaintiffs, jointly and severally, demand judgment against defendants, Manzo, McCarthy, Furman and Singh  for compensatorydamages, punitive damages, attorneys fees, interest, and costs of suit.


## COUNT TWO

### VIOLATION OF CIVIL RIGHTS UNDER 42 USC 1983 ET SEQ AGAINST DEFENDANT OFFICERS INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES BASED ON SUPERVISORY AND BYSTANDER LIABILITY UNDER 42 U.S.C. 1983

63.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 62 inclusiveas if each were fully set forth herein.

64.     At all times material hereto, Defendant Manzo thirty-three (33) years of service at the time of Decedent's death and had risen to the rank of Sergeant in the Defendant TPD.

65.     Defendant Manzo, at all times material hereto, had supervisory authority and control of the remaining responding officers, McCarthy ( 4 years of service),  Furman (3 years of service) and Singh (2 years of service).

66.     As the supervisor on scene, Defendant Manzo had the duty and authority to oversee the methods of restraint, if any,  to be used to assist Decedent's mental event but instead, used unreasonable restraint methods and applied objectively unreasonable force to Decedent thereby causing the injuries and damages incorporated herein.

67.     Defendant, Manzo, acted in his official and/or individual capacity, to maliciously violate Decedent's civil and constitutional rights in a wanton manner by recklessly and or callously disregarding Decedent's rights, health, safety, and welfare, including but not limited to,  stopping or preventing the unreasonable body strikes to

plaintiff while being handcuffed, and continuing to hold plaintiff's and press Decedent's

face into the ground to restrict his breathing and cries for help.

68.     At all times material hereto,  the Defendant Manzo's violations of 42 USC 1983

was a direct and proximate cause of Decedent's injuries and death, and was a substantial factor

in causing Decedent's injuries and death including but not limited to Decedent's pain, suffering,

emotional distress, and mental anguish in  contemplating his death, as well as the loss of

eco0nomic damages and services to his dependent wife and minor children caused by the

Defendant Officers, jointly and severally, thereby entitling plaintiffs and Plaintiff's Estate to

compensatory damages, punitive damages, interest, attorneys fees, costs of suit and such other

relief as the Court deems just and appropriate.

WHEREFORE, Plaintiffs, jointly and severally, demand judgment against defendants,

Manzo, McCarthy, Furman and Singh  for compensatorydamages,  punitive damages, attorneys

fees, interest, and costs of suit.

## COUNT THREE

**VIOLATION OF CIVIL RIGHTS UNDER 42 USC 1983 ET SEQ AGAINST
DEFENDANT OFFICERS INDIVIDUALLY AND IN THEIR OFFICIAL
CAPACITIES BASED ON SUPERVISORY AND BYSTANDER LIABILITY
UNDER 42 U.S.C. 1983**

69.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 68

inclusive  as if each were fully set forth herein.

70.     At all times material hereto, Defendant Manzo thirty-three (33) years of service at

the time of Decedent's death and had risen to the rank of Sergeant in the Defendant TPD.

71.    Defendant Manzo, at all times material hereto, had supervisory authority and control of the remaining responding officers, McCarthy ( 4 years of service),  Furman (3 years of service) and Singh (2 years of service).

72.    At all times material hereto, defendants, McCarthy, Furman, and Singh, jointly and severally,  had a duty to object and intervene in the unreasonable use of excessive force in the application of  methods of restraint being used on Decedent, including the objectively unreasonable and excessive application of pressure to Decedent's head and neck by Defendant Manzo while he screamed for help and said he could not breathe.

73.    Defendants, McCarthy, Furman, and Singh,  acted in their official and/or individual capacities, to maliciously violate Decedent's civil and constitutional rights in a wanton manner by recklessly and or callously disregarding Decedent's rights, health, safety, and welfare, by intentionally failing to stop the asphyxiation of Decedent by Defendant Manzo.

74.    At all times material hereto,  the Defendant officers' violations of 42 USC 1983 were a direct and proximate cause of Decedent's injuries and death, and were a substantial factor in causing Decedent's injuries and death including but not limited to Decedent's pain, suffering, emotional distress, and mental anguish in  contemplating his death, as well as the loss of eco0nomic damages and services to his dependent wife and minor children caused by the Defendant Officers, jointly and severally, thereby entitling plaintiffs and Plaintiff's Estate to compensatory damages, punitive damages, interest, attorneys fees, costs of suit and such other relief as the Court deems just and appropriate.

WHEREFORE, Plaintiffs, demand judgment against defendants, Manzo, McCarthy, Furman, and Singh jointly and severally, for compensatory damages, punitive damages, attorneys fees, interest and costs of suit.

**COUNT FOUR**
**VIOLATION OF CIVIL RIGHTS UNDER 42 USC 1983 ET SEQ AGAINST**
**DEFENDANTS CITY OF TRENTON AND**
**TRENTON POLICE  DEPARTMENT  AND POLICE DIRECTOR COLEY FOR**
**INADEQUATE POLICIES, PROCEDURES AND CUSTOMS**
**RESULTING IN CIVIL AND CONSTITUTIONAL VIOLATIONS**

75.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 74 inclusive as if each were fully set forth herein.

76.    At all times material hereto, the City of Trenton, the Trenton Police Department and/or Police Director Coley, adopted and implemented the policies, practices, and procedures for the handling of emergency mental health cases and application of use of force including "compliance holds" by its officers.

77.    At all times material hereto, defendant, the City of Trenton, the Trenton Police Department and/or Police Director Coley, failed to adopt and provide proper policies, practices and procedures to their officers regarding how to properly observe and attend to the medical needs of subjects coming under their care, whether the use of compliance holds, including holds restricting breathing, was appropriate and whether a mental health professional should be dispatched to assist.

78.    At all times material hereto, defendants, the City of Trenton, the Trenton Police Department and/or Police Director Coley required officers to complete a "Use of Force report" whenever force was used.

16

79.     The form of the report has checked categories but does not include medical emergency as a category.

80.     The form has checked categories including but not limited to "compliance holds."

81.     All four defendant officers filled out a "Use of Force" report in this case.

82.     All four defendant officers listed Decedent as a " suspicious person."

83.     All four defendant officers listed the use of a "compliance hold" in their reports.

84.     None of the use of force reports inquire as to the nature of the compliance hold, the body position of the subject, the duration of the hold or any statements by the subject of pain, inability to breath, the medical condition or state of the subject, or statements by the subject of fear the subject will die or any other indicia indicating whether the use of the compliance hold was reasonable.

85.     Defendants,  the City of Trenton, the Trenton Police Department and/or Police Director Coley  thus condoned and perpetrated a custom and practice of the use of unlawful compliance holds as the Use of Force reports were essentially useless in ferreting out the unlawful use of force by its officers in applying a compliance hold or appropriate for use in addressing the needs of a mental emergency subject as an after-action review of the actions taken by the officers for corrective or disciplinary action.

86.     It  is a published standard of care  well-known throughout the law enforcement community that holding a subject in a prone position as a compliance hold for extended periods of time enhances the prospect of sudden death, particularly if breathing is restricted.

17

87.     Compressing an arrestee in a prone position with weight on their neck, back and/or abdomen restricts their ability to breathe and can result asphyxiation.

88.     Death caused by this form of asphyxiation is referred to as death from positional, mechanical or compression asphyxia.

89.     In 1995, the United States Department of Justice, citing the National Law Enforcement Technology Center, from a report prepared by the International Association of Chiefs of Police for the National Institute of Justice, published a bulletin warning law enforcement more than twenty-five (25) years ago about the dangers of prone face-down restraint, stating: "*The risk of positional asphyxia is compounded when an individual with predisposing factors ( such as obesity, alcohol and high drug use, enlarged heart) becomes involved in a violent struggle with an officer or officers, particularly when physical restraint includes behind-back hand handcuffing combined with placing the subject in a stomach-down position. National Law Enforcement Technology Center*, "**Positional Asphyxia-Sudden Death**" (June 1995).

90.     On April 21, 2021, the Medical Examiner's Office of the State of New Jersey issued an amended death certificate which reflected the manner of death of decedent, Stephen A. Dolceamore, was "*Homicide*" and that the injury occurred as a result of "*physical restraint*". The immediate cause of death was determined to be "*Methamphetamine intoxication with physical restraint and chest wall restriction*."

91.     Governmental liability under *Monell* of Defendants, the City of Trenton, the Trenton Police Department and/or Police Director Coley, arises jointly and severally under their policy-making and supervisory authority over the individual defendant officers, thereby entitling plaintiffs, jointly and severally,to direct damages for the deprivation of civil rights of Decedent.

92.     At all times material hereto, defendants the City of Trenton, the Trenton Police Department and/or Police Director Coley , jointly and severally, deprived plaintiff of his civil and constitutional rights through their intentional, wanton, willful actions and/or acted with extreme indifference to human life thereby directly and proximately caused the death of or were a substantial factor in causing the death of deceased plaintiff by official policies, regulations, customs and practices formulated, tolerated and thus tolerated, and expressly or implicitly approved the civil and constitutional deprivations causing the death of Decedent plaintiff and the injuries and damages to the plaintiffs herein.

93.     At all times material hereto, deceased plaintiff suffered pain, suffering, and contemplation of death, caused by the unlawful policies, practices and procedures of defendants, the City of Trenton, the Trenton Police Department and/or Police Director Coley, jointly and severally, thereby entitling plaintiffs to compensatory damages, punitive damages, attorneys fees, interest  and costs of suit.

WHEREFORE, Plaintiffs, demand judgment against defendants, the City of Trenton, the Trenton Police Department and/or Police Director Coley, jointly and severally, for compensatory damages, punitive damages, attorneys fees, interest, and costs of suit.

## COUNT FIVE
## VIOLATION OF CIVIL RIGHTS UNDER 42 USC 1983 ET SEQ AGAINST
## DEFENDANTS CITY OF TRENTON AND
## TRENTON POLICE  DEPARTMENT  AND POLICE DIRECTOR COLEY FOR
## INADEQUATE TRAINING AND SUPERVISION
## CAUSING  CIVIL AND CONSTITUTIONAL VIOLATIONS

94.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 93 inclusiveas if each were fully set forth herein.

95.     At all times material hereto, the City of Trenton, the Trenton Police Department and/or Police Director Coley, adopted and implemented the training and supervision, if any, for the  handling of  emergency mental health cases and application of use of force including "compliance holds" by its officers.

96.     At all times material hereto, defendant, the City of Trenton, the Trenton PoliceDepartment and/or Police Director Coley, failed to provide adequate training and supervision to their officers regarding how to properly observe and attend to the medical needs of subjects coming under their care, whether the use of compliance holds, including holds restricting breathing, was appropriate and whether a mental health professional should be dispatched to assist.

97.     At all times material hereto, defendants, the City of Trenton, the Trenton Police Department and/or Police Director Coley required officers to complete a "Use of Force report" whenever force was used.

98.     The form of the report has checked categories but does not include medical emergency as a category.

99.     The form has checked categories including but not limited to "compliance holds."

100.    All four defendant officers filled out a "Use of Force" report in this case.

101.    All four defendant officers listed Decedent as a " suspicious person."

102.    All four defendant officers listed the use of a "compliance hold"  in their reports.

103.    None of the use of force reports inquire as to the nature of the compliance hold, the body position of the subject, the duration of the hold or any statements by the

subject of pain, inability to breath, the medical condition or state of the subject, or statements by the subject of fear the subject will die or any other indicia indicating whether the use of the compliance hold was reasonable.

104.    Defendants,  the City of Trenton, the Trenton Police Department and/or Police Director Coley  thus condoned and perpetrated a custom and practice of the use of unlawful compliance holds as the Use of Force reports were essentially useless in ferreting out the unlawful use of force by its officers in applying a compliance hold or appropriate for use in addressing the needs of a mental emergency subject as an after-action review of the actions taken by the officers for corrective or disciplinary action.

105.    The published standard of care  well-known throughout the law enforcement community that holding a subject in a prone position as a compliance hold for extended periods of time enhances the prospect of sudden death, particularly if breathing is restricted.

106.    Compressing an arrestee in a prone position with weight on their neck, back and/or abdomen restricts their ability to breathe and can result asphyxiation.

107.    Death caused by this form of asphyxiation is referred to as death from positional, mechanical or compression asphyxia.

108.    In 1995, he United States Department of Justice, citing the National Law Enforcement  Technology Center, from a report prepared by the International Association of Chiefs of Police for the National Institute of Justice, published a bulletin  warning law enforcement more than twenty-five (25) years ago about the dangers of prone face-down restraint, stating: "*The risk of positional asphyxia is compounded when an individual with predisposing factors ( such as obesity, alcohol and high drug use, enlarged heart) becomes involved in a violent struggle with an officer or officers, particularly when physical restraint*

includes behind-back hand handcuffing combined with placing the subject in a stomach-down position. *National Law Enforcement Technology Center*, "**Positional Asphyxia-Sudden Death**" (June 1995).

109.   On April 21, 2021, the Medical Examiner's Office of the State of New Jersey issued an amended death certificate which reflected the manner of death of decedent, Stephen A. Dolceamore, was "*Homicide*" and that the injury occurred as a result of "*physical restraint*". The immediate cause of death was determined to be "*Methamphetamine intoxication with physical restraint and chest wall restriction*."

110.   Governmental liability under *Monell* of Defendants, the City of Trenton, the Trenton Police Department and/or Police Director Coley, arises jointly and severally  under their policy-making and supervisory authority over the individual defendant officers, thereby entitling plaintiffs, jointly and severally,to direct damages for the deprivation of civil rights of Decedent.

111.   At all times material hereto, defendants the City of Trenton, the Trenton Police Department and/or Police Director Coley , jointly and severally, deprived plaintiff of his civil and constitutional rights through their intentional, wanton, willful actions, inactions, omissions, and/or acted with extreme indifference to human life thereby directly and proximately caused the death of or were a substantial factor in causing the death of deceased plaintiff by their inadequate supervision and training and thus tolerated, and expressly or implicitly approved the civil and constitutional deprivations causing the death of Decedent plaintiff and the injuries and damages to the plaintiffs herein.

112.   At all times material hereto, deceased plaintiff suffered pain, suffering, and contemplation of death, caused by the unlawful practices and procedures of defendants, the City of Trenton, the Trenton Police Department and/or Police Director Coley, jointly and

severally, thereby entitling plaintiffs to compensatory damages, punitive damages,attorneys fees, interest, and costs of suit.

WHEREFORE, Plaintiffs, demand judgment against defendants, the City of Trenton, the Trenton Police Department and/or Police Director Coley, jointly and severally, for compensatory damages, punitive damages, attorneys fees, interest and costs of suit.

## COUNT SIX

## VIOLATION OF THE NEW JERSEY CIVIL RIGHTS ACT AGAINST ALL DEFENDANTS IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES

113.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 74 of Counts One, Two and Three,  inclusiveas if each were fully set forth herein.

114.    At all times material hereto, Defendants, Manzo, McCarthy, Furman, and Singh, jointly and severally, deprived plaintiff ofhis New Jersey civil and constitutional rights through their intentional, wanton, willful actions and/or acted with extreme indifference to human life thereby directly and proximately caused thedeath of or were a substantial factor in causing the death of deceased plaintiff.

115.    At all times material hereto, deceased plaintiff suffered pain, suffering, andcontemplation of death, caused by defendants, thereby entitling plaintiffs to compensatorydamages, punitive damages, attorneys fees, interest, and costs of suit.

116.    The acts and omissions of Defendants, Manzo, McCarthy, Furman, and Singh,  jointly and severally, deprived Decedent plaintiff of his civil and constitutional rights under the New Jersey Civil Rights Act, which acts and omissions directly caused the damages of Plaintiffs as set forth herein.

23

WHEREFORE, Plaintiffs, demand judgment against defendants, the City of Trenton, the Trenton Police Department and/or Police Director Coley, Manzo, McCarthy, Furman  and Singh, jointly and severally, for compensatory damages, punitive damages, attorneys fees, interest, and costs of suit.

### COUNT SEVEN

### VIOLATION OF CIVIL RIGHTS UNDER THE NEW JERSEY CIVIL RIGHTS AGAINST DEFENDANTS CITY OF TRENTON , TRENTON POLICE DEPARTMENT AND POLICE DIRECTOR COLEY

117.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 116, including Counts One, Two , Three, Four and Five,  inclusive as if each were fully set forth herein.

118.    At all times material hereto, defendants, the City of Trenton, the Trenton Police Department and/or Police Director Coley, failed to provide its officers with proper policies,  guidance and training on how to properly observe and attend to the medical needs of a medical emergency subject.

119.    The governmental liability under *Monell* of Defendants,  the City of Trenton, the Trenton Police Department and/or Police Director Coley, arises under their policy making and supervisory authority over the individual defendant officers, thereby entitling plaintiffs, jointly and severally,to direct damages for the deprivation of civil and constitutional rights of Decedent under the New Jersey Civil Rights Act.

120.    At all times material hereto, deceased plaintiff suffered pain, suffering, and contemplation of death, caused by the unlawful practices and procedures of defendant, City and TPD, thereby entitling plaintiffs to compensatory damages, punitive damages,attorneys fees and costs of suit.

24

WHEREFORE, Plaintiffs, demand judgment against defendants, the City of Trenton, the Trenton Police Department and/or Police Director Coley, Manzo, McCarthy, Furman  and Singh, jointly and severally, for compensatory damages, punitive damages, attorneys fees, interest, and costs of suit.

## COUNT EIGHT

### WRONGFUL DEATH AND SURVIVORSHIP
### THE NEW JERSEY CIVIL RIGHTS ACT
### AGAINST ALL DEFENDANTS IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES

121.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 120 and Counts Five and Six, inclusive as if each were fully set forth herein.

122.    At all times material hereto, defendants, jointly and severally, deprived plaintiff ofhis civil and constitutional rights through their intentional, wanton, willful actions and/or acted with extreme indifference to human life thereby directly and proximately caused the death of or were a substantial factor in causing the death of deceased plaintiff.

123.    At all times material hereto, deceased plaintiff suffered pain, suffering, andcontemplation of death, caused by defendants, thereby entitling plaintiffs to compensatorydamages, punitive damages, attorneys fees, interest, and costs of suit.

WHEREFORE, Plaintiffs, demand judgment against defendants, the City of Trenton, the Trenton Police Department and/or Police Director Coley, Manzo, McCarthy, Furman  and Singh, jointly and severally, for compensatorydamages, punitive damages, attorneys fees, interest, and costs of suit.

## COUNT NINE
## WRONGFUL DEATH AND SURVIVORSHIP AGAINST ALL DEFENDANTS IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES

124.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 123, inclusive as if each were fully set forth herein.

125.    At all times material hereto, defendants, jointly and severally, caused plaintiff pain, suffering and death by their negligent, reckless, intentional, wanton and/or willful and malicious acts and/or omissions directly and proximately causing or being a substantial factor in causing the injuries and damages set forth herein, thereby entitling Plaintiffs, jointly and severally, to compensatory damages, punitive damages, interest, attorneys fees and costs of suite under the Wrongful Death Act, N.J.S.A. 2A:31-2 et seq and Survivorship Act, N.J.S.A. 2A:15-3 et seq., of the State of New Jersey.

WHEREFORE, Plaintiffs, demand judgment against defendants, the City of Trenton, the Trenton Police Department and/or Police Director Coley, Manzo, McCarthy, Furman  and Singh, jointly and severally, for compensatorydamages, punitive damages, attorneys fees and costs of suit.

Respectfully submitted

DATED:  March 1, 2022          */s/ Joseph P. Grimes*

JOSEPH P. GRIMES
Joseph P. Grimes, Esquire, LLC
810 Asbury Avenue – Suite 212
Ocean City, NJ 08226
(w) 856-816-7900
(f)  888-791-0772
(e)  JGrimesEsq@Gmail.com
Attorney for Plaintiffs

## NOTICE OF JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable under R. 38 (a) & (b).

Respectfully submitted

DATED:  March 1, 2022

*/s/ Joseph P. Grimes*

JOSEPH P. GRIMES
Joseph P. Grimes, Esquire, LLC
810 Asbury Avenue – Suite 212
Ocean City, NJ 08226
(w) 856-816-7900
(f)  888-791-0772
(e)  JGrimesEsq@Gmail.com
Attorney for Plaintiffs

## CERTIFICATION PURSUANT TO L. Civ R. 11(b)

I am retained to represent Plaintiffs in this matter.  I hereby certify that to the best of my knowledge the matter in controversy is not the subject of any other action pending in any court, or of a pending arbitration or administrative proceeding.  There are no other parties of whom I am presently aware who should be joined to this action.  I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Respectfully submitted

DATED:  March 1, 2022

*/s/ Joseph P. Grimes*

JOSEPH P. GRIMES
Joseph P. Grimes, Esquire, LLC
810 Asbury Avenue – Suite 212
Ocean City, NJ 08226
(w) 856-816-7900
(f)  888-791-0772
(e)  JGrimesEsq@Gmail.com
Attorney for Plaintiffs